HALLETT CONSTRUCTION COMPANY, a Minnesota corporation, appellee, v. IOWA STATE HIGHWAY COMMISSION, appellant.

No. 52622.

(Reported in 154 N.W.2d 71)

NOVEMBER 14, 1967.

Richard C. Turner, Attorney General, Roger H. Ivie, Special Assistant Attorney General, L. Michael McGrane, Assistant Attorney General, and Ray Hanrahan, of Des Moines, State Counsel, for appellant.

J. R. Austin and Ross H. Sidney, of Des Moines, and Thomas M. Collins, of Cedar Rapids, for appellee.

MOORE, J.—This appeal is a sequel to Hallett Construction Co v. Iowa State Highway Commission, 258 Iowa 520, 139 N.W.2d 421, in which we reversed the trial court's order setting aside defaults against the commission in plaintiff's three similar law actions for damages for breaches of construction contracts and warranties incident thereto. We ordered the defaults reinstated but set aside the default judgments to the extent they were not for a sum certain.

On remand the trial court reinstated the defaults against the commission and conducted further proceedings as directed in our first opinion.

The three actions were tried together to the court and judgments entered thereafter in favor of plaintiff including $326,016.77 for contract balances due plaintiff but retained by defendant commission after completion and final acceptance of plaintiff's work. This amount was not disputed in the trial court and its allowance is not challenged here. The judgments also include damages totaling $646,341.80 for loss caused by defendant's negligence and breaches of contract in failing to properly coordinate work on highway 80 construction projects. Plaintiff was delayed for over one year in starting performance of its prime contract.

From judgments in the three cases totaling $972,358.58 plus interest and costs defendant has appealed. By agreement of counsel and by our order the three cases have been consolidated on this appeal.

Defendant contends (1) because of certain provisions in the specifications it had no liability over and above the contract price regardless of any and all other facts and circumstances and (2) the trial court erred in including as a proper measure of damage the reasonable rental value of plaintiff's equipment for loss of its use while sitting idle on the jobsites.

In our prior opinion we make a full statement of the actions and the allegations of each petition which are essentially similar. Plaintiff's claims and allegations remain unchanged. We will therefore not repeat all the details but will attempt only to summarize.

The first petition filed by plaintiff asks for judgment of $783,143.18. All three petitions contain essentially the same allegations except for dates and amounts involved. We therefore will refer to the allegations of plaintiff's first petition which asks for the largest recovery.

That petition alleges plaintiff was required to and did agree by letter to have a two paver spread with all necessary equipment and personnel on the highway 80 project in Cedar County on the contract date, July 1, 1959, and was ready, willing and able to perform all necessary work for timely completion of the contracts but was delayed in starting the work until July 1960 because preliminary preparation of the site for

paving had not been completed. Defendant refused to allow use of this equipment on a nearby project during this delay.

Plaintiff further alleges defendant warranted and represented to plaintiff the plans and specifications were complete, accurate and sufficient to enable plaintiff to compute its costs and that plaintiff would be able to commence work on or about the contract date and proceed in an orderly fashion. It alleges breach of contract and warranties incident thereto and damages resulting therefrom.

That petition further alleges the fair and reasonable amount of damages totaled $585,731.49 in addition to the retained percentage due for work done in the sum of $197,411.69 and that defendant had acknowledged plaintiff had been damaged and the amount being retained for work completed. Itemization of plaintiff's allegations of damages is set out in our first opinion and need not be repeated. Plaintiff's claims for damages in the other two cases are essentially the same type but for smaller amounts.

After the petitions were filed defendant, by its counsel at that time, filed special appearances in each case which were overruled September 4, 1964. Defendant failed to file anything further. Attorneys for plaintiff by letter requested an answer be filed. This was not done. On November 4, 1964, pursuant to plaintiff's request and under rules 230 and 231, Rules of Civil Procedure, the district court clerk entered defaults against defendant. Counsel's failure to plead prior to entry of the defaults is inexcusable.

Without any attempt to show a meritorious defense defendant's motions to have these defaults set aside necessarily failed. We so held in our first opinion.

Defendant's present counsel were thus placed at great disadvantage at the hearing following remand. They were permitted to make objections, cross-examine plaintiff's witnesses on damages and to use witnesses in regard thereto. Over plaintiff's objections defendant introduced and put in evidence the plans and specifications made by reference a part of each of the construction contracts referred to in plaintiff's petitions.

I. Based on statutory provisions then in force our older cases hold a party in default could only appear for the purpose of cross-examining the witnesses of the adverse party. See Cook & Owsley v. Walters, 4 (Clarke) Iowa 72; Carleton v. Byington, 17 Iowa 579; Wright v. Lacy, 52 Iowa 248, 3 N.W. 47. In Burlington and Missouri River Railroad Co. v. Shaw, 5 (Clarke) Iowa 463, we hold a default admits the averment of the cause of action in the petition, and that something is due and payable.

Rayburn v. Maher, 227 Iowa 274, 285, 288 N.W. 136, 141, states: "It is true, that when a defendant defaults, the plaintiff becomes entitled to certain advantages. But such failure by the defendant does not enlarge his claim nor broaden his rights under the allegations of his petition. His right of recovery and the amount and nature thereof is still limited by those averments. Though a defendant may default, he is still within the pale of the law and is entitled to just treatment. He has a right to expect and to demand that plaintiff's recovery shall be confined, and responsive, to his pleaded demand. The legislature has assured him of that right, whether he answers or does not answer, by section 11573, Code 1935."

These special statutes were repealed upon enactment of our Rules of Civil Procedure which became effective July 4, 1943.

Rule 102, R.C.P., provides: "Every fact pleaded and not denied in a subsequent pleading as permitted by these rules shall be deemed admitted except (1) allegations of value or amount of damages, * * *."

Rule 103 provides every defense in plea or abatement shall be made in the answer or reply with certain exceptions therein stated which are not pertinent here.

■■ Our earlier cases and our present rules place us within the general rule that in an inquiry of damages upon default, all the plaintiff's material allegations are taken as true and the determination of the amount of damages to be awarded is all that remains to be done. In the trial of the question of damages the defaulting defendant has the right to be heard and participate. He may cross-examine witnesses

and may offer proof in mitigation of damages. Defendant may in effect even defeat the action by showing that no damages were caused to plaintiff by the matters alleged. 30A Am. Jur., Judgments, section 219; 49 C.J.S., Judgments, section 201.

The rule is stated thus in 25A C.J.S., Damages, section 172, page 133: "On the hearing of an assessment of damages after default, defendant may make no defense to the action, but he has a right to be heard on the matter of damages, and he may contest the amount."

II. Defendant argues because plaintiff's petition alleges the plans and specifications for each of the projects covered by the contracts sued on were submitted to plaintiff and were made a part thereof by reference that they were part of plaintiff's petition. Our study of the petition leads us to agree with this contention.

From this point defendant contends the specifications limit plaintiff's recovery to the amount of each contract. We do not agree.

Specification 1102.03 provides: "Examination of plans, specifications, special provisions and site of work. It is the responsibility of the bidder to examine the plans, specifications, special provisions and the site of the work to make sure that the requirements are fully understood. Bidders must satisfy themselves as to the nature of the work and all conditions affecting the performance of the contract."

Specification 1109.02 provides: "Scope of payment. The contractor shall accept the compensation herein provided as full payment for furnishing all materials, labor, tools and equipment and for performing all work under the contract; also for all cost arising from the action of the elements, or from any unforeseen difficulties which may be encountered during the prosecution of the work and up to the time of the acceptance thereof, except damages to the work due to the acts of war."

As we understand defendant's position, it claims these two provisions amount to a "no damage" clause and although in default they should be permitted to defeat allowance of any amount above the contract price.

Plaintiff denies this amounts to a "no damage" clause. It argues defendant under the guise of attempting to contest the amount of damages is asserting an unpleaded bar or defense of its claim and further the default admits the allegations of its petition that warranties were made, breached and plaintiff suffered damages as a result thereof. We agree.

In Cunningham Bros., Inc. v. City of Waterloo, 254 Iowa 659, 117 N.W.2d 46, we recognize a specific "no damage" clause in a construction contract for delays is valid, but due to the harsh results often induced thereby it will be strictly construed.

Even a specific "no damage" clause in a construction contract will not be enforced where the delay is the result of fraud or active interference upon the part of the party seeking the benefit thereof. Cunningham Bros., Inc. v. City of Waterloo, supra; 13 Am.Jur.2d, Building, Etc. Contracts, section 52; Annotation, 10 A.L.R.2d 801.

If defendant wanted to rely on the above cited provisions of the specifications, which seem to amount to much less than a specific "no damage" clause, they should have before the defaults in 1964 pleaded and asserted the same as a bar to plaintiff's recovery. Plaintiff then would have been given an opportunity to plead and defend against such an alleged defense. The recovery allowed by the trial court in each of the three cases is well within the averments of the petitions each of which state a cause of action.

III. Defendant's second assignment as set out in its brief and as argued on this appeal is the trial court erred in allowing as part of plaintiff's damages the rental value of equipment owned by plaintiff while sitting idle on the jobsites.

More than two years before trial plaintiff at defendant's request furnished a written detailed statement of plaintiff's various items claimed as damages. The proof on trial was submitted to the trial court exactly as earlier indicated to defendant. The only item or measure of damage which defendant contested was allowance of the reasonable rental value of the idle equipment.

Charles Davis, assistant secretary and employee of plain-

tiff since 1956, after relating his experience with the company as a superintendent and estimator of highway paving jobs, testified in detail concerning each item of plaintiff's claim for damages. He stated reasonable rental on the various pieces of equipment was computed by taking the monthly rental rate from the American Equipment Dealers Publication of 1959 and for some not listed therein the 1956 publication was used. He stated defendant-commission had recognized and used these publications for the purpose of determining rental value of the type of equipment involved. As to a few items not in the A.E.D. publication he testified the reasonable rental value was determined by taking an amount equal to ten percent of the total cost of the equipment per month. This he said was the recognized method of determining rental value of such items. He estimated reasonable monthly rental value of trucks based on the rate shown by the Iowa State Highway Commission Bulletins.

Davis testified he then multiplied the monthly rental of each unit of equipment sitting idle on the job by 7.3 months. This was the period the equipment could have been actually used during the year.

W. W. Wickman, a construction engineer for defendant-commission for many years, was called as a witness by defendant. His testimony includes: "According to our instructions and the organization instructions of the Iowa State Highway Commission, which has been agreed to with the A.G.C., we use 80 percent of the A.E.D. rate."

Otherwise plaintiff's claim for damages was not attacked by defendant except its contention rental value was not the proper measure of damages. Defendant argues loss of profit was the proper measure. We do not agree. The authorities are overwhelmingly against defendant's contentions.

In 22 Am.Jur.2d, Damages, section 152, page 220, the editor states: "Generally, damages are awarded for interference—either tortiously or in breach of contract—with the plaintiff's right to use the property item. These damages are usually measured by the rental value of the item involved or by the reasonable cost of hiring a replacement item, although

other measures are found in the cases." For similar statements see also 25 C.J.S., Damages, section 83c.

In Corbin on Contracts, Volume 5, section 1094, pages 513, 514, this statement is made: "The building contractor's claim for damages may be based in part on losses due to the owner's causing unreasonable delay in completion. The contractor's machinery and labor force may have been kept idle, when but for the delay they would have been income producing. In such a case these losses must be estimated. It is proper to admit expert testimony as to the rental value of machinery, the extra amounts paid to hold the labor force together, and also a reasonable proportion of overhead costs fairly chargeable to this job during the delay."

In Knaus Truck L. v. Commercial Frgt. L., 238 Iowa 1356, 29 N.W.2d 204, we considered the question of the proper measure for the loss of the use of a tractor-trailer which had been damaged and which the evidence showed had a recognized rental value. We held evidence of rental value was proper and evidence as to profits from use of the equipment was rightly rejected.

The facts in Garofano Constr. Co. v. State, 183 Misc. 1080, 52 N.Y.S.2d 186, are almost on all fours with those in the case at bar. At page 1083, 183 Misc., page 188, 52 N.Y.S.2d, the court states: "It is well established that the State is liable in damages for its failure to deliver a contract site and provide a contractor with reasonable opportunity to perform his contract without interference [citing authorities] and that a contractor may recover for the fair and reasonable rental value of machinery held on the site during period of delay."

Another case with similar facts, Anders v. State, 42 Misc.2d 276, 248 N.Y.S.2d 4, holds the rental value of idle equipment is a proper element of damages.

IV. The findings of fact in this law action tried to the court are supported by substantial evidence and are therefore binding on this court. Rule 344(f)(1), R.C.P.

We are well aware of the shocking consequence of defendant-commission's acts and omissions during 1959-60 and the fact they result in a needless loss of taxpayers' money of over

three quarters of a million dollars. The damage award of $646,341.80 bears interest at five percent from September 1961.

Plaintiff in effect had its property appropriated and held by the highway commission for over a year. Its request to move some of the equipment to a nearby site where it could be used and delay damages mitigated was refused by defendant.

The three judgments of the trial court must be and are affirmed.—Affirmed.

All JUSTICES concur.